ELIZABETH B. FORSYTH, State Bar No. 288311
PAUL R. CORT, State Bar No. 184336
Earthjustice
50 California Street
San Francisco, CA 94111
eforsyth@earthjustice.org
pcort@earthjustice.org
Tel: 415-217-2000/Fax: 415-217-2040

*Attorneys for Plaintiffs Sierra Club, Center for Biological Diversity, WildEarth Guardians, Medical Advocates for Healthy Air, and Physicians for Social Responsibility – Los Angeles*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO/OAKLAND DIVISION

| | |
|---|---|
| SIERRA CLUB, CENTER FOR BIOLOGICAL DIVERSITY, WILDEARTH GUARDIANS, MEDICAL ADVOCATES FOR HEALTHY AIR, and PHYSICIANS FOR SOCIAL RESPONSIBILITY – LOS ANGELES,<br><br>　　　　Plaintiffs,<br>　　v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; GINA MCCARTHY, in her official capacity as Administrator of the United States Environmental Protection Agency; and JARED BLUMENFELD, in his official capacity as Regional Administrator of the United States Environmental Protection Agency,<br><br>　　　　Defendants. | Case No:<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>(Clean Air Act, 42 U.S.C. §§ 7401 *et seq.*) |

COMPLAINT

**INTRODUCTION**

1. One of the most dangerous forms of air pollution is fine particulate matter pollution. Fine particulate matter pollution consists of tiny, dirty motes that come from sources like diesel exhaust, agricultural activities, and heavy industry. These tiny particles can be easily inhaled deep into the lungs and even absorbed into the bloodstream where they can cause a host of negative health impacts.

2. The most polluted areas of the country for fine particulate matter pollution are California's Los Angeles-South Coast Air Basin and San Joaquin Valley. Under the Clean Air Act, these areas were required to come into attainment with the Environmental Protection Agency's (EPA's) 1997 fine particulate matter pollution standards by December 31, 2011. When they failed to attain these standards by that date, the Clean Air Act required EPA to make a finding by June 30, 2012 that these areas had failed to achieve attainment by the applicable date, and to publish notice in the Federal Register that these areas had been reclassified by operation of law as "Serious Areas." This "Serious Area" designation requires more aggressive and stringent air pollution control measures to be put in place.

3. EPA has failed to make the required finding that these areas failed to achieve attainment of fine particulate matter pollution standards, and failed to publish the required notice that these areas are now "Serious Areas." This is an action to compel the Administrator of the Environmental Protection Agency to fulfill these mandatory duties under the Clean Air Act, to ensure that Plaintiffs' members receive the pollution protections that the Clean Air Act requires.

**JURISDICTION AND VENUE**

4. The instant action arises under the Clean Air Act, 42 U.S.C. §§ 7401 *et seq*. This Court has jurisdiction over this action pursuant to 42 U.S.C. § 7604 and 28 U.S.C. §§ 1331 and 1361. The relief requested by Plaintiffs is authorized pursuant to 42 U.S.C. § 7604 and 28 U.S.C. §§ 2201, 2202, and 1361.

5. In accordance with 42 U.S.C. § 7604(b)(2) and 40 C.F.R. Part 54, Plaintiffs notified the Administrator of the violations alleged herein, and of Plaintiffs' intent to initiate the present action. This notice was provided via certified mail on July 30, 2014 and addressed to the

Administrator. More than 60 days have passed since notice was served, and the violations complained of are continuing.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) since: (a) this district is one in which Defendant EPA resides and performs its official duties; (b) a substantial part of the events and omissions giving rise to this claim have occurred in this district because EPA's Regional Office in San Francisco, California, has as substantial role in implementing the EPA duties at issue in this case; and (c) Plaintiff Sierra Club resides in this district.

7. Similarly, because Defendant EPA and Plaintiff Sierra Club both reside in San Francisco, assignment to the San Francisco Division or the Oakland Division of this Court is proper under Civil Local Rule 3-2(c) and (d).

**PARTIES**

8. Plaintiff Sierra Club, a corporation organized and existing under the laws of the State of California, is a national nonprofit organization of approximately 625,000 members, roughly 147,000 of whom live in California. The Sierra Club is dedicated to exploring, enjoying, and protecting the wild places of the earth; to practicing and promoting the responsible use of the earth's ecosystems and resources; to educating and encouraging humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives.

9. Plaintiff Center for Biological Diversity ("Center"), a corporation organized and existing under the laws of the State of California, is a national nonprofit conservation organization that has offices across the United States, including California. The Center has more than 775,000 members and supporters dedicated to the preservation, protection, and restoration of biodiversity and ecosystems throughout the world. The Center works to insure the long-term health and viability of animal and plant species across the United States and elsewhere, and to protect the habitat these species need to survive. The Center has also worked to achieve full implementation of the Clean Air Act to protect ecosystems and the environment.

10. Plaintiff WildEarth Guardians, a corporation organized and existing under the laws of the State of New Mexico, is a nonprofit organization dedicated to protecting and restoring the wildlife, wild places, wild rivers, and health of the American West.

11.     Plaintiff Medical Advocates for Healthy Air is a California nonprofit organization consisting of medical professionals living in the San Joaquin Valley who regularly treat patients suffering from respiratory ailments caused or greatly exacerbated by the unhealthy levels of air pollution in the area. Its mission is to advocate for the expeditious attainment of state and federal health-based air quality standards in the San Joaquin Valley.

12.     Plaintiff Physicians for Social Responsibility – Los Angeles, a corporation organized and existing under the laws of the State of California, is a California nonprofit organization dedicated to advocating for policies and practices that improve public health, eliminate environmental threats, and address health inequalities.

13.     Plaintiffs' members live, work, recreate and conduct other activities in areas where their health and welfare are adversely affected or threatened by fine particulate matter pollution.

14.     The acts and omissions of EPA complained of herein cause injury to Plaintiffs and their members by delaying designation of the Los Angeles-South Coast Air Basin and the San Joaquin Valley as serious nonattainment areas for fine particulate matter pollution. This delay injures Plaintiffs' members by allowing air quality conditions to persist that impair or threaten members' health and welfare, and by nullifying or delaying measures mandated by the Act to protect members' health and welfare from fine particulate matter pollution. The health, recreational, aesthetic, and environmental interests of Plaintiffs' members have been and continue to be adversely affected by the acts and omissions of EPA.

15.     For all the foregoing reasons, the failures complained of herein cause Plaintiffs and their members injuries for which they have no adequate remedy at law. Granting the requested relief would redress these injuries.

16.     Defendant EPA is the federal agency charged with implementation of the Clean Air Act.

17.     Defendant Gina McCarthy is the Administrator of EPA, and is responsible for implementation and enforcement of the Clean Air Act. Defendant McCarthy is sued in her official capacity, and officially resides in Washington, D.C.

COMPLAINT                                                                                                              4

18. Defendant Jared Blumenfeld is the Regional Administrator of EPA for the Pacific Southwest (Region 9), and is responsible for implementation and enforcement of the Clean Air Act within California. Defendant Blumenfeld is sued in his official capacity, and officially resides in San Francisco, CA.

## BACKGROUND AND FACTS

### PM2.5 Pollution

19. Particulate matter pollution, or PM, refers to particles suspended in the air. Particles less than 10 micrometers in diameter (PM10) pose a health threat because they are respirable, and are regulated under the Clean Air Act.

20. Particles less than 2.5 micrometers (PM2.5) are considered by EPA to pose the greatest health risks. Finer particles are typically composed of more toxic materials, like heavy metals and carcinogenic organic compounds, than larger particles. And these tiny particles—less than 1/30 the width of a human hair—can be easily inhaled deep into the lungs, where they can remain embedded or absorbed into the bloodstream. These lighter particles also stay in the air longer and travel further than larger particles; whereas larger particles can stay in the air for minutes or hours and travel up to thirty miles, PM2.5 can stay in the air for days or weeks and travel hundreds of miles.

21. According to EPA, exposure to PM2.5 has been linked to premature death, heart attacks, irregular heartbeat, aggravated asthma, decreased lung function, and increased respiratory symptoms. Many of these impacts are suffered most acutely by our most vulnerable, including people with heart or lung disease, children, and the elderly.

22. PM2.5 also adversely impacts wildlife and ecosystems. Numerous studies have linked negative health effects in animals with high concentrations of numerous fine particle components. As EPA has explained, the impacts of PM2.5 on terrestrial ecosystems are "profound and adverse." Compounds associated with PM2.5 change the nutrient and acidifying characteristics of water bodies and soil, increasing plant mortality and decreasing ecosystem biodiversity. Moreover, PM2.5 adversely affects the visibility and aesthetics of our natural surroundings by contributing to visibility impairment.

23. The most polluted areas in the country for PM2.5 are California's Los Angeles-South Coast Air Basin and San Joaquin Valley. These areas are particularly burdened by PM2.5 sources like cars, trucks, agriculture, and heavy industry, and air pollution is trapped in place by surrounding mountains. As a result, people living in the Los Angeles-South Coast Air Basin and the San Joaquin Valley suffer from high rates of asthma and other health ailments and experience regular impairment of natural visibility. The wildlife and ecosystems in those areas are also adversely affected by the ongoing PM2.5 violations.

### The Clean Air Act's Requirements for PM2.5

24. The Clean Air Act establishes a comprehensive scheme "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1).

25. As one of its central features, the Clean Air Act requires the Administrator of EPA to set national ambient air quality standards for certain air pollutants, including particulate matter, at a level "requisite to protect the public health" with "an adequate margin of safety." 42 U.S.C. § 7409(b)(1). EPA is required to designate those areas failing to meet these standards as "nonattainment" areas. 42 U.S.C. § 7407.

26. The Clean Air Act requires that areas designated as nonattainment for particulate matter come into attainment with EPA's standards within six years of a nonattainment designation. 42 U.S.C. § 7513(c)(1).

27. Within six months of the attainment date, EPA must make a determination whether the areas have attained the PM2.5 standards. 42 U.S.C. § 7513(b)(2).

28. If EPA determines that the areas have not attained the PM2.5 standards, "the area shall be reclassified by operation of law as a Serious Area" and EPA must publish notice in the Federal Register that the area has been reclassified. 42 U.S.C. § 7513(b)(2)(A), (B).

29. For Serious Areas, the attainment date is no later than the end of the tenth calendar year beginning after the area's designation as nonattainment. 42 U.S.C. § 7513(c)(2).

30. Within eighteen months of designation as a Serious Area, a state must submit a Serious Area Plan. 42 U.S.C. § 7513a(b)(2).

31. This Serious Area plan must demonstrate that the plan provides for attainment of the particulate matter standard by the Serious Area attainment date. The Plan must also assure that the best available control measures for the control of particulate matter are implemented no later than four years after an area is classified as Serious. 42 U.S.C. § 7513a(b)(1).

32. The design of the Clean Air Act thus ensures that the areas of the country consistently out of attainment with PM2.5 standards make increasingly aggressive progress towards cleaning up the air.

**EPA's Duty to Designate the Los Angeles-South Coast Air Basin and the San Joaquin Valley as Serious Nonattainment Areas for PM2.5**

33. In 1997, EPA revised the national ambient air quality standards for particulate matter, setting a 15.0 μg/m$^3$ annual standard and 65 μg/m$^3$ 24-hour standard for PM2.5. 62 Fed. Reg. 38,652 (July 18, 1997); 40 C.F.R. § 50.7.

34. Effective April 5, 2005, EPA designated the Los Angeles-South Coast Air Basin and the San Joaquin Valley as nonattainment areas for the 1997 PM2.5 standards. 70 Fed. Reg. 944, 955 (Jan. 5, 2005); 40 C.F.R. § 81.305.

35. Six years after this nonattainment designation, by December 31, 2011, the Los Angeles-South Coast Air Basin and the San Joaquin Valley were required to come into attainment with EPA's 1997 PM2.5 standards. 42 U.S.C. § 7513(c)(1).

36. Neither the Los Angeles-South Coast Air Basin nor the San Joaquin Valley attained the 1997 PM2.5 standards by December 31, 2011.

37. Within six months of the attainment date, by June 30, 2012, EPA was required to publish notice in the Federal Register that the Los Angeles-South Coast Air Basin and the San Joaquin Valley failed to come into attainment and were reclassified as Serious Areas. 42 U.S.C. § 7513(b)(2).

38. These areas remain out of attainment with the 1997 PM2.5 standards.

39. To date, EPA has failed to make a determination that the Los Angeles-South Coast Air Basin and the San Joaquin Valley failed to attain EPA's 1997 PM2.5 standards by the attainment

date; and has failed to publish notice in the Federal Register that these areas have been reclassified by operation of law as Serious Areas.

## CLAIM FOR RELIEF

## Failure to Designate the Los Angeles-South Coast Air Basin and the San Joaquin Valley as Serious Areas for PM2.5 by the Statutory Deadline

40. Plaintiffs hereby incorporate all previous paragraphs by reference.

41. Defendants have failed to fulfill their duties under 42 U.S.C. § 7513(b) to make a determination that the Los Angeles-South Coast Air Basin and the San Joaquin Valley failed to attain EPA's 1997 PM2.5 standards by the attainment date and publish notice in the Federal Register that these areas have been reclassified by operation of law as Serious Areas.

42. Defendants' failure to timely complete these duties constitutes failure to perform acts or duties that are not discretionary within the meaning of 42 U.S.C. § 7604(a)(2).

43. Defendants' failure to perform these nondiscretionary duties is ongoing. Plaintiffs are informed and believe that the omissions complained of herein will continue unless enjoined by order of this Court.

44. Accordingly, Plaintiffs are entitled to an order from this Court declaring that Defendants have failed to perform the above-referenced nondiscretionary acts and duties, and directing Defendants to perform such acts and duties immediately.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that the Court:

(A) Declare that Defendants' failure to act as complained of herein constitutes a failure to perform nondiscretionary duties required by 42 U.S.C. § 7513(b), and within the meaning of 42 U.S.C. § 7604(a)(2);

(B) Issue a mandatory injunction requiring EPA to immediately perform its mandatory duties;

(C) Retain jurisdiction over this action to ensure compliance with the Court's orders;

(D) Award Plaintiffs their reasonable costs of litigation, including attorneys' fees, pursuant to 42 U.S.C. § 7604(d); and

1      (E)    Grant such other relief as the Court deems just and proper.

DATED: October 15, 2014         Respectfully submitted,

*[signature: Elizabeth Forsyth]*

_____
ELIZABETH B. FORSYTH, State Bar No. 288311
PAUL R. CORT, State Bar No. 184336
Earthjustice
50 California Street
San Francisco, CA 94111
eforsyth@earthjustice.org
pcort@earthjustice.org
Tel: 415-217-2000/Fax: 415-217-2040

*Attorneys for Plaintiffs*